## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

————————————————————————— )
                                                            )
**PAKACHOAG ACRES**                                         )
**DAY CARE CENTER, INC.,**                                  )
**,**                                                       )
                        **Plaintiff,**                      )
                                                            )
                                                            )
            **v.**                                          )        **CIVIL ACTION**
                                                            )        **No. 20-40083-TSH**
                                                            )
**PHILADELPHIA INDEMNITY**                                  )
**INSURANCE COMPANY,**                                      )
                        **Defendant.**                      )
————————————————————————— )


## MEMORANDUM OF DECISION AND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
**September 24, 2021**


**HILLMAN, DJ.**

        Plaintiff Pakachoag Acres Day Care Center ("Pakachoag") brought the present suit

against defendant Philadelphia Indemnity Insurance Company ("Philadelphia") seeking coverage

under its insurance policy (the "Policy") for property damage, business income loss and other

expenses incurred due to the COVID-19 pandemic.  Pakachoag asserts that Philadelphia's denial

of coverage under the Policy was a breach of contract (Count I); breach of the implied covenant

of good faith and fair dealing (Count II); and that Philadelphia's conduct violated Mass. Gen. L.

ch. 93A (Count III). Philadelphia moved to dismiss all counts, contending that Pakachoag's

losses are not covered under the Policy. For the reasons stated below, the motion to dismiss is

**granted**.

**Factual Backgroud**

Unless otherwise indicated, the following facts are based on the facts alleged in the Amended Complaint and the Exhibits referenced therein.

**Parties**

Pakachoag is a 501(c)(3) nonprofit corporation that provides daycare services at its centers located at 141 Auburn Street, Auburn and 153 Millbury Avenue, Millbury, Massachusetts. Philadelphia is an insurance company incorporated in Pennsylvania with a principal place of business at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania.

**The Insurance Policy and Claims**

Pakachoag purchased a Commercial Property Coverage Policy ("the Policy") from Philadelphia on July 1, 2019 (*See* Exhibit 1 to the Complaint, Docket No. 13-1). The Policy period was July 1, 2019 to July 1, 2020 and included coverage for Business Income, Extra Expenses and additional coverage related to the action of a civil authority ("Civil Authority Coverage"). The Policy also contains a coverage exclusion for loss caused by a virus. ("Virus Exclusion").

Under the Business Income and Extra Expense coverage, the Policy states that coverage extends to costs "incurred when your covered building or business personal property listed on the Declarations is damaged by a Covered Cause of Loss…", which is "due to direct physical loss of or damage to property…" (Docket No. 13-1, at ¶117-18).  The Policy defines property damage to include "[l]oss of use of tangible property that is not physically injured" under the "Commercial General Liability Coverage Form." (Docket No. 13-1, at ¶144). The coverage is limited to the "Period of Restoration". (Docket No. 13-1, at ¶67). The Period of Restoration ends when the

property should be "repaired, rebuilt or replaced… or… when the business is resumed at a new permanent location." (Docket No. 13-1, at ¶75).

The Civil Authority Coverage proffers similar requirements for coverage as the Business Income and Extra Expense Coverage in that the Civil Authority Coverage extends coverage:

> for the actual loss of 'Business Income' you sustain and necessary 'Extra Expense' caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(Docket No. 13-1, at 118).

The Policy also contains a Virus Exclusion notice, entitled Massachusetts – Exclusion of Loss Due to Virus or Bacteria Advisory Notice to Policyholders (Docket No. 13-1, at ¶13). The Virus Exclusion states excludes coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.". *Id.* The Virus Exclusion also states that the form does not change the terms of the policy and that if any conflicts between the Virus Exclusion and the Policy exist, the provisions of the Policy prevail. *Id.*

### COVID-19 Pandemic

On March 10, 2020, Governor Baker declared a state of emergency in Massachusetts due to the outbreak of COVID-19. On March 11, 2020, the World Health Organization ("WHO") declared COVID-19 to be a global pandemic. On March 15, 2020, Governor Baker prohibited gatherings of 25 or more throughout the Commonwealth, and on March 23, 2020 this was reduced to gathering of 10 or more. That same day, Governor Baker announced a stay-at-home advisory and ordered all non-essential businesses closed. Pursuant to the Order of March 23, 2020, Pakachoag initially closed its business entirely but soon obtained a provisional license thereafter to operate at 10% capacity for children of first responders and essential employees.

Pakachoag alleges lost revenues of approximately $20,000.00 per week. On May 18, 2020, Governor Baker announced a Three-Stage Reopening Plan. Under the Reopening Plan, at the time of its response to the motion, Pakachoag was not able to operate at full capacity.

On May 5, 2020, Pakachoag filed a notice of claim and provided notice of its losses and expenses to Phildadelphia. The claim was denied after Philadelphia determined that the losses were not covered under the Policy, but for which Pakachoag claims it has given "no reason for refusing to approve plaintiff's claim" and that Philadelphia has "performed an unreasonable investigation or no investigation at all." (Docket No. 13, at ¶47-48). Pakachoag filed suit in this Court on June 29, 2020 and amended its Complaint on October 29, 2020. Philadelphia has moved to dismiss all claims.

## **Standard of Review**

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556).

In determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give a plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (*citing Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.

2008) (*quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Under Massachusetts law, the interpretation of an insurance contract is a question of law. *See Boston Gas Co. v. Century Indem. Co*., 454 Mass. 337, 355 (2009). Courts are required to apply general contract-interpretation principles and construe "the words of the policy in their usual and ordinary sense." *Dorchester Mutual Ins. Co. v. Krusell*, 485 Mass. 431, 437 (2020) (*quoting Metropolitan Life Ins. Co. v. Cotter*, 464 Mass. 623, 634-35 (2013)). "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable . . . without according undue emphasis to any particular part over another." *Boston Gas Co*., 454 Mass. at 355-56 (internal quotation marks and citations omitted). When in doubt, a court must consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Id*. at 356 (*quoting A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 518 (2005)). Any ambiguities in an insurance policy "are interpreted against the insurer who used them and in favor of the insured." *Krusell*, 485 Mass. at 437 (*quoting Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London*, 449 Mass. 621, 628 (2007)). An ambiguity "arises when there is more than one rational interpretation of the relevant policy language," but "is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other." *Boston Gas Co*., 454 Mass. at 356 n.32 (internal quotation marks and citations omitted).

## Discussion

*Breach of Contract – Business Income and Extra Expense Coverage*

Philadelphia contends that the Complaint fails to state a claim for coverage under the Business Income and Extra Expense provisions because Pakachoag failed to allege "direct

physical loss of or damage to property" at its daycare centers. Defendant also contends that the Amended Complaint fails to plausibly allege that COVID-19 contaminated Pakachoags' daycare centers or any property within them. Pakachoag argues that its losses fall within coverage of the Policy because COVID-19 caused the closures that resulted in its loss of use of its business premises and should be considered a physical loss of property.

<u>Direct Physical Loss of or Damage to Property</u>

The Court must first consider the plain meaning of the policy language. As noted, the policy provides coverage for "loss" or "damage" that is "direct" and "physical." The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." (Hampshire Policy at 131). Although "physical" is not defined in the policy, taken as a whole, it is clear that the provisions do not provide coverage for financial or other intangible losses. Instead, there must be a "physical" loss of or damage to a tangible object, such as the structure of a building. *See SAS Int'l, Ltd.*., 520 F.Supp.3d 140) ("[T]hese terms require some enduring impact to the actual integrity of the property at issue. In other words, the phrase 'direct physical loss of or damage to' does not encompass transient phenomena of no lasting effect, much less real or imagined reputational harm.")

In cases with similar facts and claims related to COVID-19 mandated business closures, courts in Massachusetts have construed the phrase "direct physical loss" narrowly, concluding that a covered claim requires some kind of tangible, material loss. *See, e.g., Hampshire House Corp. v. Fireman's Fund Insurance Co*., 20-11409-FDS, 2021 WL 3812535 at *6 (D. Mass. Aug. 26, 2021) ([T]he presence or threat of coronavirus does not constitute a "direct physical loss of or damage to property,); *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 20-cv-10850, slip op. at 7-9 (D. Mass. Mar. 5, 2021) ("Courts in Massachusetts have had occasion to interpret the

phrase 'direct physical loss' and have done so narrowly, concluding that it requires some kind of tangible, material loss."); *Vervaine Corp. v. Strathmore Ins. Co.*, 2020 WL 8766370, at *3 (Mass. Sup. Ct. Dec. 21, 2020) ("The phrase 'direct physical loss of or damage to property' in a property insurance policy like this one cannot therefore be construed to cover physical loss in the absence of some physical damage to the insured's property." Accordingly, the plain meaning of "direct physical loss" require[s] some enduring impact to the actual integrity [of the insured premises and] does not encompass transient phenomena of no lasting effect. *SAS Int'l, Ltd. v. General Star Indem. Co*., 520 F.Supp.3d 140 (D.Mass. 2021). These decisions reflect the position of an increasingly large majority of courts across the country, "which is that restrictions on the use of property by government orders due to the threat or presence of coronavirus do not constitute "direct physical loss" of property." *Hampshire House*, 2021 WL 3812535 at *7 (citations omitted).

Many of the decisions cited by Pakachaog have since been distinguished. Pakachoag cites to the decisions in *Essex Ins. Co. v. BloomSouth Flooring Corp*., 562 F.3d 399 (1st Cir. 2009) and *Matzner v. Seaco Ins. Co*., No. 96-0498-B, 1998 WL 566658, 1998 Mass. Super. LEXIS 407 (Mass. Super. Aug. 12, 1998) for the proposition that a virus can cause physical damage, however another session of this Court has since held that COVID-19 fundamentally differs from the unpleasant odors and fumes at issue in those cases. *See SAS Int'l, Ltd*., 2021 WL 664043, at *4. This Court has also recently held that even the actual contamination of a property does not have the requisite "physical" effect. *See, e.g.*, *Legal Sea Foods, slip op*. at 8 ("A virus is incapable of damaging physical structures because the virus harms human beings, not property." (*internal quotation marks and citation omitted*)).

Accordingly, Count I of the complaint will be dismissed with respect to the claim for coverage under the business income and extra expense provisions of the Policy.

*Breach of Contract – Civil Authority Coverage*

Both the Business Expense Coverage and Extra Expense Coverage require Pakachoag to establish "direct physical loss" to its Covered Property. Similarly, the Civil Authority Coverage requires Pakachoag to establish that a civil authority barred access to Pakachoag's premises in response to direct physical loss of or damage to property other than Pakachoag's Covered Property. (Id.). So, in all cases, direct physical loss of or damage to property is a prerequisite to coverage

Pakachoag also asserts that the Policy provides coverage under the Civil Authority section and Philadelphia Indemnity has breached the Policy by refusing to provide coverage. Philadelphia Indemnity contends that Pakachoag is not entitled to damages under the Civil Authority Coverage of the Policy and the Pakachoag's amended complaint should be dismissed as Pakachoag has failed to make any allegations that governmental closure orders resulted from a "direct physical loss of or damage to" a nearby structure, Pakachoag's amended complaint neither alleges a COVID-19 outbreak, nor direct physical loss or damage, other courts have found that no coverage exists unless there is a direct nexus between the civil authority and the damaged property, and, lastly, Governor Baker's orders did not prohibit use of the daycare centers.

The Civil Authority coverage requires "prohibited access" and, as discussed in the section above, courts have not equated limited access to prohibited access. *See Handel*, 2020 WL 6545893 at *3-4; *Legal Sea Foods*, 2021 WL 858378 at *5. Count I of Pakachoag's amended

complaint should be dismissed as the Civil Authority coverage does not extend coverage to government orders limiting access to property.

*Breach of Contract – Virus Exclusion*

Even if Pakachoag was able to show that its losses were covered under the Policy, the Virus Exclusion precludes coverage. Philadelphia Indemnity contends that Pakachoag's amended complaint should be dismissed as Pakachoag's claims are barred under the Virus Exclusion in the Policy. Pakachoag argues that the Virus Exclusion is void as Philadelphia Indemnity never received the required approval of the virus exclusion language from the Massachusetts Division of Insurance ("DOI"), the Pakachoag's daycare premises were never contaminated with COVID-19, and that Regulatory Estoppel prevents the application of the Virus Exclusion, citing to the Supreme Judicial Court's ("SJC") favorable reading of the doctrine in *Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 555 N.E.2d 568, 573, 407 Mass. 675, 682-83 (1990).

The Virus Exclusion explicitly states that the coverage under the Policy does not extend to the loss or damage resulting from a virus. It also states that it does not change the coverage under the Policy. First, Pakachoag's regulatory estoppel argument is unavailing as the SJC has not accepted the regulatory estoppel doctrine. *Millipore Corp. v. Travelers Indem. Co*., 115 F.3d 21, 30 (1st Cir. 1997) ("The SJC has never recognized New Jersey's doctrine of regulatory estoppel in this context, and there is no indication that Massachusetts would adopt the doctrine."). Second, Pakachoag's facilities were never contaminated with COVID-19, thus the damage is not a result of loss or damage from a virus, but rather from government orders. Finally, even if the DOI did not approve the language of the Virus Exclusion and the Virus Exclusion is thereby void, this does not create coverage under the Policy. *See SAS Int'l, Ltd. v. Gen. Star Indem. Co*., 520 F.Supp.3d 140 (D.Mass. 2021) (holding the "'absence of a [virus]

exclusion does not operate to create coverage' for pandemic-related losses") (citing *Given v. Com. Ins. Co.*, 440 Mass. 207, 212, 796 N.E.2d 1275, 1279 (2003)).

*Breach of the Covenant of Good Faith and Fair Dealing and Chapter 93A*

Because Pakachoag cannot establish coverage under the Policy and thus cannot maintain its breach of contract claims, it may not invoke the implied covenant of good faith and fair dealing. *Uno Restaurants, Inc. v Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 668 (2001) (covenant may not be invoked to create rights and duties not otherwise provided for in the original contract).

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," M.G.L. c. 93A, § 2(a). In the insurance context, specifically, an insurer does not violate Chapter 93A in denying coverage "so long as [it] made a good faith determination to deny coverage" even if the insurer's interpretation of the policy was incorrect. *Ora Catering, Inc. v. Northland Ins. Co*., 57 F. Supp. 3d 102, 110-11 (D. Mass. 2014). "When coverage has been correctly denied ... no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found." *Select Hospitality v. Strathmore Insurance*, No. 21-20-11414-NMG, 2021 WL 1293407 at *5 (D.Mass. 2021), *quoting Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins.* Co., No. 14-13649-JCB, 2015 WL 13234578 at *10 (D. Mass. Sept. 22, 2015). As the Court has determined that the presence of COVID-19 on the premises of Pakachoag's daycare centers does not establish coverage under the Policy, there can be no claim under Chapter 93A.

## **Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss (Docket No. 14) is

***granted***.


**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE